Filed 7/22/26  Marriage of Alegre CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of Jessica and Joseph Alegre. | |
| JESSICA ALEGRE,<br><br>    Respondent,<br><br>    v.<br><br>JOSEPH ALEGRE,<br><br>    Appellant. | D085611<br><br>(Super. Ct. No. D557359) |

APPEAL from an order of the Superior Court of San Diego County, Rebecca G. Church, Judge.  Affirmed.

Andrew J. Botros and Emiliza P. San Diego for Appellant.

Cage & Miles and John T. Sylvester for Respondent.

In 2015, after a 24-year marriage, Jessica Alegre and Joseph Alegre separated and entered a marital settlement agreement (MSA) that required

Joseph to pay Jessica certain child and spousal support.[1]  In 2022, after the parties' children had all reached the age of majority, Jessica brought a motion seeking arrears for unpaid support.  The motion resulted in a significant downward modification of the amount of monthly spousal support Joseph paid Jessica.  Less than two years later, after he became briefly unemployed, Joseph filed a motion to terminate spousal support altogether.  The family court denied the motion, finding there had been no material change in circumstances to support a modification of the prior support order and that Jessica's separate estate was insufficient to provide for her proper support under Family Code section 4322.[2]

On appeal from the order denying his request to terminate spousal support, Joseph asserts the family court erred by finding Jessica's separate estate was insufficient to provide her proper support.  Joseph alternatively argues the court erred by finding no change in material circumstances and by failing to evaluate his request in accordance with section 4320.  As we shall explain, we reject Joseph's arguments and affirm the family court's order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Separation and Divorce Judgment*

The Alegres were married in May 1991 and separated in September 2015.  They share three children, two of whom were minors at the time of separation.  A legal separation judgment entered in December 2015 incorporated the written MSA that resolved the issues of child support, spousal support, and the division of community and separate property.

---

[1]    First names are used in the interest of readability and to avoid confusion.  No disrespect is intended.

[2]    Subsequent undesignated statutory references are to the Family Code.

2

Under the MSA, Joseph was ordered to pay Jessica $4,124 in monthly child support and 13.67% of his bonuses and commissions as additional child support. When their second child reached age 18 and graduated high school, child support reduced to $3,424 per month and 10.25% of all bonuses and commissions. When the youngest child reached age 18 and graduated high school, child support terminated. In addition, Joseph was ordered to pay Jessica $8,750 in monthly spousal support and 34% of any salaried income he earned over $362,000, capped at $450,000. In 2022, coinciding with the termination of child support, the MSA increased monthly spousal support to $11,410 and 29% of any bonuses and commissions received up to $150,000, 34% of bonuses and commissions received between $150,000 and $250,000, and 0% of any amounts exceeding $250,000.

The MSA further provided that after the liquidation of certain business investments and the termination of child support, Joseph would pay Jessica a one-time payment of $100,000 to "reduce her mortgage on her then existing residence." Further, any income Jessica earned up to $50,000 annually would not be included as income in future support proceedings. Spousal support continued until either party's death, Jessica's remarriage, or further court order.

The MSA also assigned each party separate property. Joseph's included postseparation earnings and accumulations, personal belongings, cash and bank accounts solely in his name, Social Security benefits, and specific checking, savings, investment, and credit card accounts. Jessica's separate property included postseparation earnings and accumulations, personal belongings, cash and bank accounts solely in her name, Social Security benefits, and specific checking, savings, and investment accounts. Jessica also received college investment accounts for the children.

3

The MSA divided the parties' community property. They agreed to split Joseph's ownership interest in a capital investment firm over a certain time period. They equally split proceeds from the sale of the marital residence and Joseph agreed to cosign on Jessica's home loan in exchange for remaining on the title and having the right to inherit it from her until she refinanced the property in her own name. The parties divided the community interest in Jessica's individual retirement account and the funds liquidated from another account in Joseph's name.

B. *Settlement of Arrears and Modification of Spousal Support*

In July 2022, Jessica filed a motion seeking payment of child and spousal support arrears. Jessica alleged Joseph stopped paying court-ordered spousal support in 2019. She also asserted Joseph owed past-due child support, college reimbursement costs, and the separate $100,000 lump-sum payment of spousal support required under the MSA. Jessica alleged Joseph owed $24,769 in child support and $378,460 in spousal support plus interest. Jessica also sought attorney's fees and sanctions.

In support of her motion, Jessica filed an income and expense declaration, reporting her average monthly income as $6,263 from employment and $4,000 from dividends and interest, with expenses of $11,291. She reported assets of $233,000 in cash, $3 million in stocks, bonds, or other assets she could sell, and $450,000 in other real and personal property. In the income and expense declaration Joseph filed in response to Jessica's motion, he reported average monthly income of $25,000 and expenses of $21,945. He reported assets of $8,354 in cash, $157,091 in stocks, bonds, or other assets he could sell, and $35,000 in other real or personal property.

4

At the hearing on Jessica's motion, the parties reached a stipulation and order on the unpaid child and spousal support arrears, which the family court entered in October 2022. Therein, Joseph was ordered to pay Jessica $414,055 in spousal support arrears and tuition reimbursement in two installments, and to pay $5,000 in attorney's fees. The stipulated order set Joseph's child support arrears at zero. The parties also agreed to modify spousal support, reducing the monthly payment from $11,410 plus bonus amounts to $4,000. All other provisions of the spousal support orders in the MSA remained in full force and effect, and if Joseph failed to make his support payments on time, the support terms would revert to the amounts in the MSA. Joseph also agreed to maintain a life insurance policy as security for spousal support upon his death, and to keep this policy in place through the end of 2030.

C. *Motion to Terminate Spousal Support*

In February 2024, Joseph filed a motion to terminate spousal support. He claimed two changes of circumstances warranted termination. First, he asserted his employment had been unstable. He stated he had not maintained "the same level of income since the separation," and had suffered periods of unemployment and was currently unemployed. Second, Joseph asserted the parties were "essentially on equal footing in terms of [their] financial affairs, income, and investment income." He noted that he had paid the full amount required under the 2022 stipulation, and that Jessica had previously reported $3 million in assets that yielded "passive income, a rate of return, and unrealized capital gains." Joseph also asserted Jessica was employed full-time, no longer had domestic duties in terms of caring for minor children, and was "self-sufficient and self-supporting at this time." He asserted Jessica had "sufficient earnings and substantial financial resources

5

to more than maintain the standard of living established during the marriage."

In his income and expense declaration, Joseph reported no employment income, and monthly expenses of $18,472. He reported assets consisting of $20,000 in cash, $120,000 in stocks, bonds, or other assets he could sell, and $575,000 in real and personal property. He identified assets that included a home worth $1.6 million, a BMW and Audi, a stock portfolio worth $1.5 million, and $20,000 in cash.

Jessica filed a response opposing the request to terminate spousal support. She also requested a continuance to conduct discovery and argued an evidentiary hearing might be required "to analyze the Family Code § 4320 factors." In her income and expense declaration, Jessica reported average monthly income of $7,083 from employment and $5,824 in dividends and interest, with monthly expenses of $12,288. She reported assets of $212,000 in cash, $3 million in stocks, bonds, or other assets she could sell, and $550,000 in other real and personal property.

At the initial hearing on the termination motion on March 27, 2024, the court set the matter for an evidentiary hearing and ordered both parties to file updated income and expense declarations. In Joseph's updated declaration, he reported he had obtained new employment, and was now earning $29,167 in average monthly wages, with expenses of $19,629. He reported assets consisting of $10,000 in cash, $950,000 in stocks, bonds, or other assets he could sell, and $335,000 in other real and personal property.

In Jessica's updated income and expense declaration, she reported average monthly income of $7,139 from employment and $5,824 in dividends and interest, with expenses of $12,334. Her assets consisted of $300,000 in

6

cash, $3.2 million in stocks, bonds, or other assets she could sell, and $560,000 in other real and personal property.

Jessica also filed a supplemental declaration before the hearing. Therein, she asserted Joseph's current income was nearly identical to his income at the time the MSA was entered and that Joseph's assertion that the parties were on equal financial footing was inaccurate. She stated Joseph's monthly income vastly exceeded hers, and she was essentially in the same financial position as she had been in 2022. Although she received support arrears under the 2022 stipulation, those payments were retroactive payments for money that should have been paid years prior under the MSA. She explained the earnings on her retirement and investments had improved, but the change was the result of market growth. Jessica also asserted she was living below the marital standard and there had been no change in circumstances to support termination of spousal support.

Before the evidentiary hearing, Jessica filed a brief again asserting Joseph had not shown a material change of circumstances since the 2022 stipulated order and that termination of support was unwarranted. Her asset portfolio had not significantly changed since 2022, she was not of retirement age, her employment income and investments did not provide enough income to support her at the marital standard of living, and the court should not require her to liquidate the principal of her savings as a means of support.

In his trial brief, Joseph acknowledged that since he was now employed, his prior job termination was not a changed circumstance. However, he claimed Jessica was affluent and no longer needed support. Her estate included $212,000 in bank accounts, retirement accounts valued at over $5 million combined, and $550,000 in real estate. Joseph argued the

7

court was required to terminate spousal support under section 4322 and *In re Marriage of Terry* (2000) 80 Cal.App.4th 921 (*Terry*). Joseph also asked the court to bifurcate the proceedings and rule on the section 4322 issue before considering the section 4320 factors.

The evidentiary hearing took place on October 14, 2024.[3] After opening statements by their counsel, Jessica and Joseph each testified concerning their employment, and their assets and expenses. Counsel then gave closing arguments. Joseph's counsel asserted that no change in circumstances was required for the court to terminate spousal support under section 4322 and argued termination of support was appropriate because Jessica had sufficient income and assets to support herself. Alternatively, Joseph's counsel argued that circumstances had changed because Jessica's assets had grown significantly since the divorce judgment was entered and since the parties' October 2022 stipulation reducing spousal support to $4,000.

Jessica's counsel responded that Joseph was required to show a change in circumstances before the court could consider terminating spousal support and that Joseph had not done so. He further argued that termination of spousal support was not appropriate because Jessica could not sustain the marital standard of living without continued support. At the conclusion of argument, the court took the matter under submission.

On October 21, 2024, the court issued its proposed statement of decision. Joseph filed objections to the statement, and the court entered its final decision on November 19, 2024. In its 13-page decision, the court

---

[3] Before the hearing, both parties requested that the court provide a written statement of decision addressing specific issues.

8

concluded that Joseph was required to show materially changed circumstances to support his request to terminate spousal support, and that he had failed to meet this burden. The court explained there had not been a material decrease in Joseph's ability to pay support and his brief unemployment in early 2024 was not a material change. With respect to Jessica's income, the court noted her current annual income was slightly higher than it had been in 2022, her investment dividends had risen from approximately $4,000 per month to $5,824 per month, and she received increased rent from one of the parties' adult children (from $350 in 2022 to $850). However, the court concluded these relatively small increases were not a material change in circumstances.

With respect to Jessica's assets, the court concluded they were comprised primarily of the community property she received at separation, including a Fidelity retirement account valued at $4,768,967, a Vanguard account valued at $346,000, and the equity in her home of approximately $550,000. The court noted that the increases to her separate property estate had been achieved through postjudgment employment and savings made possible only because Jessica downsized her home and expenses to a level below the marital standard of living. In addition, her standard of living had been lowered further because Joseph had failed to pay support. The court also noted that there was no evidence that Jessica could draw from her retirement accounts without penalty or invading principle.

The court found that under section 4322 and *Terry*, it would consider Jessica's separate property estate as a whole and not just assess the factors of section 4320. After a careful examination of Jessica's assets, income, and expenses, the court found that Joseph failed to show a material change in circumstances. The court also found Jessica's separate estate was

9

insufficient to provide her proper support for her reasonable needs.  Because the court concluded Joseph had not met his burden to show a material change in circumstances, the court declined to analyze whether support should be terminated under the section 4320 factors.  The court denied Joseph's motion and ordered the spousal support orders under the October 2022 stipulated order to remain in effect.

Joseph filed a timely notice of appeal from the court's final statement of decision.

## DISCUSSION

Joseph asserts the trial court erred by finding no materially changed circumstance because Jessica's estate increased from $3.68 million to $6.11 million and by failing to evaluate the motion under section 4320.  In addition, he argues the court misapplied section 4322 "by refusing to consider Jessica's ability to invade principle from her $6 million estate" and by comparing her current "individual $8,984 monthly expenses" to the "$20,000 five-person household standard" during the marriage.

### I

### *Legal Standards*

"Permanent spousal support 'is governed by the statutory scheme set forth in sections 4300 through 4360.  Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320.'  [Citation.]  The statutory factors include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property; and any other factors pertinent to a just and

10

equitable award.  (§ 4320, subds. (c)–(e), (n).)” (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1442 (*Blazer*).)

“ ‘The trial court has broad discretion in balancing the applicable statutory factors and determining the appropriate weight to accord to each, but it may not be arbitrary and must both recognize and apply each applicable factor.’ ” (*Blazer, supra*, 176 Cal.App.4th at pp. 1442–1443.)  The court “must exercise its discretion along legal lines, taking into consideration the applicable circumstances of the parties set forth [by statute], especially their reasonable needs and their financial abilities.”  (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 655.)

Before a family court may consider modifying a prior spousal support order, it “must first find ‘ “ ‘a material change of circumstances since the last order.’ ” ’ ” (*In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 424.)  When a marital settlement agreement governs spousal support, “the trial court’s changed-circumstances determination must ‘ “ ‘give effect to the intent and reasonable expectations of the parties as expressed in the agreement.’ ” ’ ” (*Ibid.*)  “The moving party bears the burden of establishing a material change of circumstances.”  (*In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 77 (*Stephenson*).)

Contrary to Joseph’s assertion, the requirement of changed circumstances also applies to a request to terminate spousal support under section 4322.  That statute provides, “In an original or modification proceeding, where there are no children, and a party has or acquires a separate estate, including income from employment, sufficient for the party’s proper support, no support shall be ordered or continued against the other party.”  (§ 4322.)  This provision permits the family court to terminate a permanent spousal support order in appropriate circumstances.  However,

11

the statute does not override the general rule that the moving party must demonstrate the existence of a material change in circumstances since the time of the last support order before the court may make any adjustment to a final spousal support award.  (See *Peterson v. Peterson* (1973) 30 Cal.App.3d 477, 479, 482 [rejecting argument that 1970 amendment to Civil Code section 4806, which was later moved to section 4322 without substantive change, " 'repeals the change of circumstances rule' "].)

The purpose of the change of circumstance requirement was explained colorfully in *In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801:  "Because family law cases typically entail issues concerning an ongoing relationship rather than a distinct event—child support, custody and visitation, for example—the law builds in the necessary flexibility to accommodate changing circumstances by postjudgment orders to show cause hearings where the judgment has provided jurisdiction to do so.  Unlike an auto accident case which might end with a tidy final judgment for money damages, the successive modifications possible in a family law proceeding can make the case resemble an unruly desert caravan strung out upon the sands." (*Id*. at pp. 807–808.)  Put another way, absent the change of circumstance rule, " 'dissolution cases would have no finality and unhappy former spouses could bring repeated actions for modification with no burden of showing a justification to change the order.  Litigants " 'are entitled to attempt, with some degree of certainty, to reorder their finances and life style [sic] in reliance upon the finality of the decree.' "  [Citation.]  Absent a change of circumstances, a motion for modification is nothing more than an

impermissible collateral attack on a prior final order.' "[4]  (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1479.)

We generally review orders to modify spousal support for abuse of discretion.  (*In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1145.)  "In reviewing findings supporting a trial court's exercise of discretion in modifying spousal support, '... this court must accept as true all evidence tending to establish the correctness of the trial judge's findings, resolving all conflicts in the evidence in favor of the prevailing party and indulging in all legitimate and reasonable inferences to uphold the judgment.' "  (*Stephenson, supra*, 39 Cal.App.4th at p. 82, fn. 5.)  A trial court's failure to base findings on substantial evidence constitutes an abuse of discretion.  (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47.)  "However, where the appeal raises a question regarding the proper interpretation of a statute, or the proper application of the law to uncontested facts, the standard of review is de novo."  (*Left*, at p. 1145.)

II

*Analysis*

Joseph contends the court erred by finding there had not been a material change in circumstances because Jessica's separate estate had

---

[4]     Joseph asserts that because he had not previously requested termination of spousal support under section 4322, and because it was not available at the time of the initial judgment incorporating the MSA since the parties still had minor children, no material change in circumstances was required for the family court to consider his request.  These arguments are not well-taken.  The requirement of changed circumstances exists regardless of whether a prior request for termination of support under section 4322 has been made.  Further, at the time of the parties entered into the October 2022 stipulated order, the parties no longer had minor children and Joseph was free to request termination of support at that time.

increased significantly since the prior support order was entered. Specifically, he argues that the estate increased from $3,683,000 (the amount Jessica reported on the income and expense declaration accompanying her motion for arrears in July 2022) to $6,112,147 at the time of trial. Jessica responds that the evidence before the court supported its finding that there had been no material change to her separate estate.

The family court found Joseph had not "met his burden to show a material change in circumstances" and that the "supported party's separate estate could [not] generate sufficient income for her proper support." These findings are supported by the record before this court and Joseph has not shown the court abused its discretion by denying his motion. With respect to changed circumstances, the evidence presented at the hearing suggested Jessica's separate estate in October 2022 was larger than she initially reported at the time of her arrears motion because she had not included all of her assets. Further, the evidence showed her investment accounts had grown only as a result of general market increases. In addition, the court found the increase to Jessica's estate above market growth was the result of Joseph's payment of approximately $400,000 to settle the arrears he owed as a result of failing to pay child and spousal support for several years. Given these facts, the evidence supported the family court's determination that the

growth in Jessica's investments did not constitute a material change in circumstances.[5]

The family court's additional finding that Jessica's separate estate was insufficient to generate enough income for her proper support is also supported by the evidence presented to the family court.[6] The court found that Jessica's monthly living expenses were slightly less than $9,000 per month and that her income, which included employment, dividends, and rent paid by the parties' adult son and which the court adjusted according to the MSA, was $9,340 per month. The court also found that Jessica's standard of living was "well below the marital standard of living and does not approach an upper-class standard," and that her "current expenses are below her reasonable needs." The court further found that Joseph's income had remained steady, with the exception of a five-week period of unemployment, since the parties entered the MSA and that he had not shown any decrease in his ability to pay support.

The court rejected Joseph's assertion that Jessica could invade the principle of her investments to provide additional income. Joseph pointed to Jessica's testimony that her largest investment account had been "modeled"

_____

[5] The record contains limited information about the source of Jessica's estate. Aside from the family court order, the only evidence concerning the Fidelity accounts that contained over $4 million at the time of the evidentiary hearing are statements for the months of December 2023, January 2024, and February 2024. The parties provide no explanation of what specifically funded the Fidelity accounts, or Jessica's other investment accounts. The parties' testimony likewise does not elucidate the exact source of the money.

[6] Although we agree with Jessica that without a change in circumstances the family court was not required to determine if termination of support was required under section 4322, we exercise our discretion to consider this issue.

to show its principal "would last" until she turned 94 years old. The court rejected this as a source of income, noting it was based on a presumption of Jessica's continued good health and "market variables which are too speculative to negate the court's analysis of her reasonable needs." Based on these factual findings, the court concluded continuation of spousal support of $4,000 per month was appropriate.

Joseph looks to two cases that considered support termination requests under section 4322 to substantiate his assertion that Jessica should have been required to supplement her income by drawing from the principal of her investments. He argues that under *Dallman v. Dallman* (1959) 170 Cal.App.2d 729 and *Terry, supra*, 80 Cal.App.4th 921, the court erred by not adequately considering Jessica's testimony that the model of her Fidelity investment accounts (provided to Joseph's counsel during discovery) showed the funds could provide her with $200,000 per year until Jessica turned 94 if she remained in good health and the market was "decent performing."[7]

Neither *Dallman* nor *Terry*, however, support Joseph's assertion that the family court's decision was erroneous. In *Dallman*, the Court of Appeal affirmed an award of alimony of $1 per year, holding the property obtained by the wife in the divorce settlement, valued at $455,965, was sufficient to provide for her proper support under a predecessor statute of section 4322. The court held the wife had not provided any evidence to support her

---

[7]   The parties have not provided this court with the exhibits from the evidentiary hearing and nothing in the record further explains the model. For example, we have no information concerning its time horizon, i.e., whether it models withdrawals from the time of the hearing to age 94, or from the time of Jessica's retirement to age 94.

assertion that her expenses exceeded the monthly income of $978 produced by the estate. (*Dallman, supra,* 170 Cal.App.2d at pp. 737–739.)

In *Terry*, the family court denied the request of the supporting spouse to terminate support under section 4322. In reversing the denial order, the Court of Appeal held that the supported spouse's large separate estate, which included an investment account of over $3.5 million, a retirement account of almost $1 million, and property without any mortgage obligation worth almost $750,000, was sufficient to provide her with proper support. (*Terry, supra,* 80 Cal.App.4th at p. 931.) In holding the wife's estate was sufficient, the court explained that the evidence showed the estate provided the wife with an annual income of $104,602 and that it had the capacity to produce greater income because there had been a change in the tax laws that reduced her potential liability for capital gains, the wife had reached retirement age and could access her retirement funds without penalty, and her support needs were between $120,000 and $144,000 per year.[8] (*Id.* at pp. 931–932.)

Unlike *Dallman* and *Terry*, the evidence before the family court here did not establish that Jessica's separate estate (although quite valuable) was sufficient to provide the amount of support the family court determined was proper under section 4322. Rather, the court concluded that the evidence

[8]     *Terry* also noted that "[h]aving concluded that the section 4322 notion of the separate estate is not synonymous with income, we are not suggesting that courts look beyond the actual income produced from the supported spouse's assets in cases where those assets are reasonably managed." (*Terry, supra,* 80 Cal.App.4th at p. 930.) Joseph presented no evidence in the family court suggesting that Jessica's estate was not reasonably managed or that it could have produced greater income if restructured. Instead, he argues only that the court should have required Jessica to invade the principal of her investment accounts. Even *Terry*, however, does not suggest such an approach is required.

17

showed Jessica's support need remained greater than the approximately $9,000 per month produced by her employment and investment income, and that Joseph remained in a position to continue to provide the $4,000 per month agreed to by the parties in October 2022. In our view, *Dallman* and *Terry* stand for the unremarkable proposition that the family court must determine the amount needed for support and the parties' relative abilities to provide for such support in ruling on a motion under section 4322. (See *In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1489, fn. 15 [" '[w]hether an estate is sufficient for one's proper support is a fact question for the trial court' "].) These cases are distinguishable and do not support reversal of the family court's well-reasoned decision in this case.

Joseph also asserts that there is an internal inconsistency in the court's decision because it does not clarify whether the court considered Jessica's assets that were acquired through the division of community property under the MSA. This argument is also not well-taken. The court's decision makes clear that it considered all of Jessica's income and assets, but that Joseph failed to show that Jessica should be required to derive additional income by invading the principal of her various investments, including her retirement accounts. There is not, as Joseph contends, any internal inconsistency in the court's decision.

Finally, Joseph argues that the family court erroneously equated the marital standard of living for the entire family, which was $20,000 per month, to Jessica's current monthly expenses in its determination of whether termination of support was appropriate. This is not an accurate representation of the court's order. The court stated that in making its determination it "*took into consideration* the parties' expenditures during the marriage." (Italics added.) The court explained those expenditures were

18

"approximately $20,000 per month as a family unit including children, ownership of a home located in the 4S Ranch area of San Diego which was approximately 3,800 square feet with five bedrooms and 4 1/2 bathrooms, the parties went on vacations and traveled, the parties enjoyed moderate casual dining per month and fine dining of 1-2 times per month, ownership of vehicles including 1 luxury vehicle near the date of separation, and Husband's salary in excess of $362,000 base pay plus sizable bonuses and commissions."

The court, however, did not state it was denying Joseph's request to terminate support in order to maintain the marital standard of living for a family of five. Rather, the court found that Jessica had reduced her own expenses from this marital standard, in part to account for Joseph's failure to pay support and also to fund their youngest child's college education. The court expressly stated that the marital standard no longer applied, but it was "a piece of information for the court to consider when analyzing reasonable needs and supports a finding in this case that this party's proper support would be above her current position." Contrary to Joseph's assertion, the family court did not equate Jessica's current financial needs to those of the family before the parties separated.

Because we affirm the family court's finding that there was no change in circumstances, we decline to reach Joseph's alternative and inconsistent argument that the court erred by failing to consider the factors set forth in section 4320 to determine the appropriate amount of spousal support. In any event, as Jessica points out in her briefing, under either section 4320 or 4322, Joseph has not shown the court applied the law incorrectly or that its decision to deny his motion to terminate support was not supported by the evidence. Indeed, Joseph provides no explanation of what section 4320

19

factors the court should have considered or how its failure to consider any factor prejudiced him, forfeiting the argument. (See *Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 ["the obligation to support points with argument and citations to authority requires more than simply stating a bare assertion that the judgment 'is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness' "].)

## DISPOSITION

The order is affirmed. Respondent is awarded the costs of appeal.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.


20